**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| EDWARD EUGENE BALLEW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-00356-RK |
| | ) | |
| COMMISSIONER OF SSA, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is Plaintiff Edward Eugene Ballew's appeal brought under 42 U.S.C. § 405(g) seeking review of the Commissioner of the Social Security Administration's denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). After careful consideration and for the reasons explained below, the Court **ORDERS** that the ALJ's decision is **AFFIRMED**.

**Standard of Review**

The Court's review of the ALJ's decision denying Plaintiff's protective applications for social security benefits is limited to whether the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). Put another way, the Court "will affirm if the ALJ made no legal error and the ALJ's decision is supported by substantial evidence on the record as a whole." *Cropper v. Dudek*, 136 F.4th 809, 813 (8th Cir. 2025) (internal quotation marks omitted).

An ALJ's "failure to comply with [Social Security Act] regulations . . . is [reversible] legal error." *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). To determine whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (internal quotation marks omitted). "If the ALJ's decision is supported by substantial evidence, [the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014)

(citing *Davis*, 239 F.3d at 966). On judicial review of the ALJ's decision, the Court does not "re-weigh the evidence presented to the ALJ," *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003)), and must "defer heavily to the findings and conclusions of the [ALJ]," *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).

**The Five Step Sequential Analysis for Disability Benefits**

To determine whether a claimant is entitled to benefits under the Social Security Act, the ALJ utilizes a familiar five-step analysis found at 20 C.F.R. §§ 404.1520(a) & 416.920(a), as follows:

At Step One the ALJ considers whether the claimant is engaged in substantial gainful work activity. If not, the ALJ moves to Steps Two and Three to consider whether the claimant has a severe medically determinable physical or mental impairment, or a combination thereof (Step Two), and whether any such impairments meet or are medically equivalent to a Listed Impairment (Step Three). If the ALJ finds that a claimant's impairments, individually or in combination, meet or medically equal a Listed Impairment found at 20 CFR Pt. 404, Subpt. P, App. 1, the claimant is entitled to disability benefits. Otherwise, the ALJ moves to Step Four of the analysis to assess and consider the claimant's residual functional capacity ("RFC")[1] and to determine whether the claimant can still do any past relevant work considering the claimant's RFC as assessed by the ALJ. In doing so, the ALJ is required to consider the persuasiveness of medical opinions and prior administrative medical findings. *See* 20 C.F.R. §§ 404.1520c & 416.920c. If the ALJ finds that the claimant can perform past relevant work given the ALJ's RFC determination, the claimant is not entitled to benefits. However, if the claimant is unable to perform past relevant work given their assessed RFC, the ALJ finally considers at Step Five whether the claimant can do other work that exists in significant numbers in the national economy considering the claimant's RFC, alongside their age, education, and work experience, and the corresponding testimony of a vocational expert. If the ALJ determines that the claimant cannot do so, the claimant is entitled to disability benefits.

[1] A claimant's RFC "is the most [the claimant] can do" despite any "physical and mental limitations that affect what [the claimant] can do in a work setting" caused by a claimant's impairment(s) and related symptoms. 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1). The ALJ's RFC assessment must be based on "all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (internal quotation marks omitted). Although it is a medical question and must be based on some medical evidence, "it is ultimately an administrative determination" for the ALJ. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007).

## Discussion

By way of overview, the ALJ found that Plaintiff had the following severe impairments: mild lumbar spine degenerative disc disease, pes cavus deformity, neuropathy, obesity, and a learning disorder as per history. (Tr. at 16.) However, the ALJ found that none of Plaintiff's impairments, whether considered alone or in combination, meet or medically equal the criteria of one of the Listed Impairments. Accordingly, at Step Four, the ALJ found that despite his limitations, Plaintiff retained the RFC to lift, carry, push, and pull up to 50 pounds occasionally and 25 pounds frequently. Plaintiff can both sit and stand or walk, with normal breaks, for a total of six hours in an eight-hour workday. He can frequently climb ramps and stairs and can never climb ladders, ropes, or scaffolds. He can frequently balance, stoop, kneel, crouch, and crawl, and can tolerate occasional exposure to vibration. Plaintiff must avoid hazards such as unprotected heights and moving mechanical parts. He can understand, remember, and apply simple instructions and can make simple work-related decisions. Further, Plaintiff can sustain concentration, persistence and pace to perform simple tasks. The ALJ found that Plaintiff can perform past relevant work as a Packer. In the alternative, the ALJ found that Plaintiff would be able to perform the requirements of an Industrial Cleaner, a Hospital Cleaner, and a Laboratory Equipment Cleaner.

**Point on Appeal: Whether the ALJ Properly Considered Plaintiff's Need to Use a Cane**

On appeal, Plaintiff argues that the ALJ's RFC assessment at Step Four is not supported by substantial evidence because the ALJ failed to properly evaluate Plaintiff's need for a cane to ambulate at length or for extended periods. (Doc. 8 at 5-9.) The Commissioner argues that the ALJ sufficiently explained why the evidence and the record did not support use of a cane. (Doc. 11 at 4-6.)

As noted above, a claimant's RFC is the most he can do considering the combined effect of all his credible limitations. *See* 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1). The RFC is based on all relevant evidence in the record and is assessed at Step Four of the sequential evaluation. It is the claimant's burden to prove his or her RFC. *Swink v. Saul*, 931 F.3d 765, 770 (8th Cir. 2019). But it is the ALJ's responsibility to determine the RFC based on all relevant evidence, including opinion evidence, medical records, observations of treating physicians and others, and the claimant's own description of his limitations. *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018); SSR 96-8p, 1996 WL 374184, at *5.

Generally, an ALJ must consider limitations resulting from a claimant's use of a cane only if the cane is "medically necessary" or "medically required." *Mya Y. v. Saul*, No. 20-cv-1296 (JRT/LIB), 2021 WL 3023691, at *4 (D. Minn. June 28, 2021). To determine whether "a hand-held assistive device is medically required or medically necessary, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and medical documentation describing the circumstances for which it is needed[.]" *Id.* (citing SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996) (internal quotation marks omitted)). A prescription (or lack thereof) for an assistive device is not necessarily dispositive of the presence or absence of medical necessity when determining the RFC, although it can be relevant. *See Staples v. Astrue*, 329 F. App'x 189, 191 (10th Cir. 2009); *see also Murray v. Berryhill*, No. 17-1086-JWL, 2018 WL 2159788, at *2 (D. Kan. May 10, 2018) (observing that although a cane was prescribed and Plaintiff used it "at times," Plaintiff did not meet his burden to show medical necessity because there was no evidence establishing that he needed to use the cane all the time, or the circumstances for which it was needed).

The medical record in this case is somewhat limited.[2] The ALJ first noted Plaintiff's December 7, 2022 physical consultative examination by Dr. Austin Thompson, at which Plaintiff brought or had a cane with him. (Tr. 336.) While Plaintiff appeared at the examination with a cane, Dr. Thompson's physical examination findings noted normal muscle bulk and tone and full range of motion, and that Plaintiff could easily or "without difficulty" remove and put on his shoes, rise from a seated position, and "walk around the room without an assistive device with a steady gait." (Tr. at 338.) Dr. Thompson noted that Plaintiff could heel walk but could only toe walk and squat with moderate difficulty. (*Id.*) Dr. Thompson recorded that Plaintiff was unable to feel a pinprick sensation in his feet (consistent with neuropathy) and opined that Plaintiff "does not appear to have discomfort with sitting/standing/walking/changes in position" but could stand for eight hours and could walk for six hours of an eight-hour workday. (*Id.*) As to use of a cane, Dr. Thompson specifically noted that Plaintiff "[d]oes have [a] cane for longer distance ambulation" but otherwise noted that he was "[s]teady without assistive device" and was "[a]ble to walk about the room without the cane." (Tr. at 343.)

Following the December 7, 2022 physical consultative examination, the medical records next contain a June 20, 2023 visit to establish care with a primary care provider, Dr. Timothy Ryan.

[2] As the ALJ noted, this may be due to a lack of health insurance and Plaintiff's inability to afford medical treatment during the relevant period. (*See* Tr. at 24.)

At this visit, Plaintiff reported a history of neuropathy and low back pain and endorsed "poor balance" but indicated that he had not fallen. (Tr. at 386.) Dr. Ryan's physical examination noted normal range of motion and strength, no tenderness, and no swelling. (*Id.*) Dr. Ryan's treatment notes do not otherwise reference use of a cane or assistive device, whether self-reported by Plaintiff or as to any observations or findings by Dr. Ryan.

Next, the ALJ noted that approximately eight months after the June 20, 2023 visit to establish primary care with Dr. Ryan, Plaintiff presented to FNP Anthony Breen for another physical consultative examination. FNP Breen's consultative examination report indicates that Plaintiff reported his history of neuropathy with constant tingly and occasionally sharp, burning, and stabbing pain, in addition to low back problems. (Tr. at 367.) FNP Breen's physical examination found normal muscle bulk, tone, and strength, consistent with Dr. Thompson's earlier physical consultative examination findings. Unlike Dr. Thompson's earlier findings, however, FNP Breen found reduced range of motion of the cervical and lumbar spine, shoulders, hips, knees, and ankles, with positive leg raise among other testing with positive results. (Tr. at 374-75.)

FNP Breen remarked that Plaintiff had a "slow, unsteady and limping gait" without using an assistive device. (Tr. at 375.) Elsewhere, however, FNP Breen noted that Plaintiff "had a slow and steady limping gait" and that "[n]o assistive device was in use," although he opined that Plaintiff "should be using an assistive device for safe ambulation." (Tr. at 370.) FNP Breen recorded that Plaintiff was unable to rise from a seated position and required assistance to get up and down from the table; Plaintiff was unable to walk on his heels (and almost fell when attempting to do so), walk on his toes, or achieve tandem walking. (*Id.*) FNP Breen ultimately opined that Plaintiff was extremely limited and could only stand for ten minutes, sit for thirty minutes, and walk for five minutes of an eight-hour workday, among other functional and postural limitations. (*Id.*)

In considering the two consultative examinations to the extent they presented "conflicting evidence," the ALJ found a subsequent October 25, 2023 analysis by state agency medical consultant, Dr. Galen Custer, "to be particularly probative." (Tr. at 23.) Dr. Custer opined that Plaintiff could, *inter alia*, stand and/or walk for six hours of an eight-hour workday. (Tr. at 73, 74.) The ALJ found that Dr. Custer's opinions were supported by and consistent with the record, particularly to the extent the second physical consultative examination by FNP Breen was inconsistent with Plaintiff's treatment records and the prior consultative examination. The ALJ found FNP Breen's consultative examination report "not persuasive," but instead found FNP

Breen's assessment of Plaintiff's functional limitations to be "excessive," considering (1) FNP Breen's own objective examination findings, (2) Plaintiff did not use a cane to walk at the examination, and (3) the prior consultative examination findings and treatment history. (Tr. at 25.) As to Dr. Thompson's initial physical consultative examination, the ALJ found Dr. Thompson's report not persuasive but in a manner favorable to Plaintiff in that the ALJ found *more* restrictions were appropriate than what were included in Dr. Thompson's consultative examination report.

On appeal, Plaintiff argues only that the ALJ failed to properly consider Plaintiff's reported need for a cane because of his balance issues, particularly for extended or longer ambulation. Plaintiff argues that "[t]he record strongly supports [Plaintiff]'s need for a cane for ambulation," and that "[d]espite this evidence in support of a cane, the ALJ rejected the necessity of [Plaintiff]'s cane." (Doc. 8 at 5.) First, the Court notes that, as the Commissioner observes, Plaintiff—represented by counsel—did not testify at the administrative hearing that he needed or relied on a cane or other device for walking assistance because of balance problems, whether for shorter or longer periods of ambulation. Nor did Plaintiff refer to a cane or other device needed for walking assistance in his functional report.

On review of the record, as set out above, Plaintiff appeared at one of two physical consultative examination reports with a cane. Dr. Thompson remarked that Plaintiff was "steady" and able to walk around the room without assistance; FNP Breen similarly remarked that Plaintiff was steady (albeit slow and limping) and that he had not appeared with a cane at that examination. Dr. Thompson's remark that Plaintiff used a cane to walk longer distances is not medical documentation establishing the need of a cane (as a medical prospect) to walk long distances. *See Edwards v. Berryhill*, No. 5:17-CV-05092-KES, 2019 WL 1320314, at *15 (D.S.D. Mar. 22, 2019) (finding that references in medical records to a claimant's use of assistive devices to walk or stand emanating from a claimant's own self reporting and to physician observation is not the kind of "medical documentation" needed to show medical necessity of use of a cane); *Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014) (emphasizing that "medical justification" is required). And as explained above, the ALJ found FNP Breen's physical consultative report to be not persuasive for various reasons concerning consistency and supportability of the opinion.

Upon review, the Court is persuaded that the ALJ properly considered the whole medical record, weighed the persuasiveness of the opinions in light of apparent conflicting evidence, and assessed Plaintiff's RFC accordingly. The Court declines Plaintiff's invitation to re-weigh the evidence in this matter. *See Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022); *Austin v.*

*Kijakazi*, 52 F.4th 723, 731 (8th Cir. 2022). The Court discerns no error in the ALJ addressing Plaintiff's RFC in light of his assertion that he medically requires a cane to walk longer distances. Although Plaintiff disagrees with the ALJ's decision, the ALJ properly evaluated the medical necessity of Plaintiff's cane, and the ALJ's findings fall within the permissible zone of choice based on proper evaluation and consideration.

**Conclusion**

Therefore, after careful consideration and review, and for the reasons set forth above, the Court **ORDERS** that the ALJ's decision is **AFFIRMED**.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: September 24, 2026